1

2

3

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

TINA LOUISE GOULD,

8

Plaintiff,

9

v.

10

CAROLYN W. COLVIN, Acting
Commissioner of Social Security

11

Administration,

12

Defendant.

NO: 2:14-CV-0090-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

13

14

BEFORE THE COURT are the parties' cross-motions for summary

15

judgment (ECF Nos. 13, 18). Dana C. Madsen represents Plaintiff. Terrye E.

16

Shea represents Defendant. This matter was submitted for consideration without

17

oral argument. The Court has reviewed the administrative record and the parties'

18

completed briefing and is fully informed. For the reasons discussed below, the

19

Court grants Defendant's motion and denies Plaintiff's motion.

20

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1117 (internal quotation marks and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

1    defined generally as the claimant's ability to perform physical and mental work

2    activities on a sustained basis despite his or her limitations (20 C.F.R. §§

3    404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the

4    analysis.

5        At step four, the Commissioner considers whether, in view of the claimant's

6    RFC, the claimant is capable of performing work that he or she has performed in

7    the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv);

8    416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the

9    Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

10   404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the

11   analysis proceeds to step five.

12       At step five, the Commissioner considers whether, in view of the claimant's

13   RFC, the claimant is capable of performing other work in the national economy.

14   20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

15   the Commissioner must also consider vocational factors such as the claimant's age,

16   education, and work experience.  *Id.*  If the claimant is capable of adjusting to

17   other work, the Commissioner must find that the claimant is not disabled.  20

18   C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of

19   adjusting to other work, the analysis concludes with a finding that the claimant is

20   disabled and is therefore entitled to benefits.  *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income, dated December 8, 2010, alleging a disability onset date of May 5, 2009, in both applications. Tr. 192-98, 199-205. These applications were denied initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 95-104, 105-15, 117-26, 127-36, 159-60. A hearing was held with an Administrative Law Judge ("ALJ") on August 16, 2012. Tr. 43-92. The ALJ rendered a decision denying Plaintiff benefits on December 11, 2012. Tr. 18-41.

As a threshold issue, the ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through December 31, 2014. Tr. 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 5, 2009, the alleged onset date. Tr. 23. At step two, the ALJ found that Plaintiff had the following severe impairments: L4 through S1 osteoarthritis and degenerative disc disease; depression; anxiety; personality

disorder, and borderline intellectual functioning.  Tr. 23.   At step three, the ALJ

found that Plaintiff did not have an impairment or combination of impairments that

meet or medically equal a listed impairment.  Tr. 24.  The ALJ then determined

that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) with standing or walking 4 hours in an 8-hour workday
> and sitting no more than 1 to 2 hours at a time. She can occasionally
> push or pull. She can perform occasional postural movements. She
> should not twist her upper body intensely. She should avoid walking
> on uneven terrain or surfaces. She can perform routine and learned
> work. She can work at a low average pace.

Tr. 26.  At step four, the ALJ found that Plaintiff was unable to perform any past

relevant work.  Tr. 34.  At step five, the ALJ found that Plaintiff could perform the

representative occupations of bench hand and outside deliverer.  Tr. 35.  In light of

the step five finding, the ALJ concluded that Plaintiff was not disabled under the

Social Security Act and denied her claims on that basis.  Tr. 37.

The Appeals Council denied Plaintiff's request for review on February 21,

2014, making the ALJ's decision the Commissioner's final decision for purposes

of judicial review.  Tr. 1-6; 20 C.F.R. §§ 404.981, 416.1484, 422.210.

///

///

///

///

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits and supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff raises the following three issues for review:

1.  Whether Plaintiff was denied due process because the ALJ considered a post-hearing medical opinion;

2.  Whether the ALJ properly discounted Plaintiff's credibility;

3.  Whether the ALJ properly weighed the medical opinions of Dr. Dalley, Dr. Clifford, Dr. Rosenkrans, and Dr. Everhart.

ECF No. 13 at 8-19.  This Court addresses each issue in turn.

**DISCUSSION**

**A.    Due Process**

Plaintiff contends that the ALJ violated the Social Security Administration's regulations and Plaintiff's due process rights when the ALJ considered a post-hearing medical opinion, which Plaintiff's representative allegedly was not given an opportunity to review and comment on before the ALJ issued his unfavorable decision.  ECF No. 13 at 18.

The administrative law judge must base his or her disability determination on "evidence offered at the hearing *or otherwise included in the record.*"  20 C.F.R. § 404.953(a) (emphasis added).  In order to aid the ALJ's disability determination where other medical evidence is inconsistent or insufficient, the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

administration "may ask [a claimant] to have one or more physical or mental

examinations or tests," at the expense of the administration.  *Id.* §§ 404.1517,

404.1519, 404.1519a.  The procedures for a consultative examination are

applicable at the initial level of determination, reconsideration, and hearing.  *Id.*

§ 404.1519.  When any evidence is offered post-hearing, the ALJ, pursuant to

internal guidance, is required to give the claimant and the claimant's

representative, if any, the opportunity to examine additional evidence in order to

(1) comment on, object to, or refute the evidence by submitting other evidence, (2)

request a supplemental hearing, or (3) cross-examine the author of the evidence.

Social Security Administration, Office of Hearings and Appeals, Litigation Law

Manual ("HALLEX"), I-2-7-1 (Apr. 17, 2015), *available at*

http://ssa.gov/OP_Home/hallex/I-02/I-2-7-1.html.  The claimant and appointed

representative, pursuant to the ALJ's proffer letter, will be given a time limit to

respond to this post-hearing evidence.  HALLEX, I-2-7-30 (Apr. 17, 2015).

    HALLEX, an internal Social Security Administration policy manual, "does

not impose judicially enforceable duties on either the ALJ or [the] court."

*Lockwood*, 616 F.3d at 1072.  Although Plaintiff cites to 20 C.F.R. § 404.916(f) for

binding regulatory authority in accordance with HALLEX guidance regarding

post-hearing evidence, this section appears to apply to hearings before a disability

1    officer at the reconsideration stage, and not to an ALJ's initial hearing.  *See Filipi*

2    *v. Chater*, F.3d 68 (8th Cir. 1995) (unpublished).

3         Nonetheless, based on the evidence in the record, it appears the ALJ sent

4    Plaintiff and her representative notice by letter regarding Dr. Everhart's post-

5    hearing consultative examination report, which letter gave Plaintiff and her

6    representative opportunity to review and respond to this evidence.  After the

7    August 2012 hearing, the ALJ had referred Plaintiff to Dr. Joyce Everhart to

8    provide a consultative examination.  Tr. 743.  Dr. Everhart examined Plaintiff on

9    September 20, 2012, and, in accordance with a signed authorization from Plaintiff,

10   disclosed her findings to the Social Security Administration.  Tr. 735-42.  On

11   October 19, 2012, the ALJ sent a letter to Plaintiff and Plaintiff's representative

12   proposing to enter Dr. Everhart's report into the administrative record.  Tr. 279-80.

13   In this letter, the ALJ informed Plaintiff's representative that she could, *inter alia*,

14   submit written comments regarding the report or request a supplemental hearing

15   within ten days of receipt of notice.  *Id.*  As Defendant highlights, nothing in the

16   record shows that this letter was undelivered to either Plaintiff or her

17   representative.  ECF No. 18 at 6.  Plaintiff does not further address Defendant's

18   assertion but appears to have abandoned her due process argument in her reply

19   briefing.  *See* ECF No. 20.

20

1    Even if neither Plaintiff nor her representative received notice of the ALJ's

2 consideration of Dr. Everhart's September 2012 report and Plaintiff was able to

3 point to a binding regulation that required such notice, Plaintiff has not shown

4 what prejudice she has suffered as a result of this lack of notice.  "Reversal on

5 account of error is not automatic, but requires a determination of prejudice."

6 *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).  "The burden is on the

7 party claiming error to demonstrate not only the error, but also that it affected his

8 'substantial rights,' which is to say, not merely his procedural rights."  *Id.*  Nothing

9 in Plaintiff's briefing meets this standard.  Accordingly, this Court does not find

10 reversible error.

11        **B.    Adverse Credibility Finding**

12    Plaintiff next contends that the ALJ improperly conducted an adverse

13 credibility analysis.  ECF No. 13 at 9-13.  In support Plaintiff asserts that (1) her

14 physical and mental symptoms were not inconsistent with objective medical

15 evidence; (2) her failure to follow prescribed treatment and undergo surgery was

16 adequately explained—she feared she would face a fate similar to her roommate's

17 daughter who ended up in a wheelchair after surgery; (3) the ALJ misstated the

18 evidence when he found her daily activities were inconsistent with her symptom

19 claims; (4) the ALJ misstated the evidence when he found Plaintiff had made

20 several inconsistent statements; and (5) the ALJ failed to consider Plaintiff's "lack

of insight" when he found her testimony regarding mental health symptoms vague and unconvincing.  *Id.*

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*, 674 F.3d at 1112 (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  First, the ALJ must determine whether the claimant has proved the existence of a physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. §§ 416.908, 416.927; *see Molina*, 674 F.3d at 1112.  A claimant's statements about his or her symptoms alone will not suffice.  20 C.F.R. §§ 416.908, 416.927.  "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence."  *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  As long as the impairment "could reasonably be expected to produce the pain or other symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment.  *Bunnell*, 947 F.2d at 345-56.  This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured."  *Id.* at 347 (citation omitted).

However, an ALJ may conclude that the claimant's subjective assessment is unreliable, so long as the ALJ makes "a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also Bunnell*, 947 F.2d at 345 ("[A]lthough an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion."). If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see Berry*, 622 F.3d at 1234 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

In weighing the claimant's credibility, the ALJ may consider many factors, including "'(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

1    treatment; and (3) the claimant's daily activities.'"  *Chaudry*, 688 F.3d at 672

2    (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)).  If the ALJ's

3    finding is supported by substantial evidence, the court may not engage in second-

4    guessing. *Id.* (quoting *Tommasetti*, 533 F.3d at 1039).

5            Here, the ALJ found that the Plaintiff's "medically determinable

6    impairments could reasonably be expected to cause some of the alleged symptoms;

7    however, the [Plaintiff's] statements concerning the intensity, persistence, and

8    limiting effects of these symptoms are not credible to the extent they are

9    inconsistent with the [RFC]." Tr. 27.  Because there is no evidence of malingering

10   in this case, the Court must determine whether the ALJ provided specific, clear,

11   and convincing reasons not to credit Plaintiff's testimony regarding the limiting

12   effect of her symptoms.  *Chaudhry*, 688 F.3d at 672.

13           This Court finds the  ALJ provided the following specific, clear, and

14   convincing reasoning supported by substantial evidence for finding Plaintiff's

15   subjective statements not fully credible: (1) the medical evidence did not support

16   the degree of physical and mental limitation alleged by Plaintiff; (2) the severity of

17   pain alleged was inconsistent with the lack of treatment sought; (3) Plaintiff's

18   testimony regarding disabling symptoms and limitations was inconsistent with her

19   reported daily activities; and (4) the ALJ found Plaintiff made several inconsistent

20

1  statements throughout the record and found her testimony regarding her mental

2  health symptoms to be vague and unconvincing.

3      First, the ALJ found the medical evidence did not support the degree of

4  physical limitation alleged by Plaintiff.  The ALJ set out, in detail, the medical

5  evidence regarding Plaintiff's physical impairments, *see* Tr. 27-28, and ultimately

6  concluded that her allegations were inconsistent, Tr. 31.  For instance, although

7  Plaintiff testified to "constant 'excruciating' back pain that radiated to her lower

8  extremities" and physical limitations as a result, the ALJ noted the following:

9  "[Claimant] displayed a normal gait, and exhibited intact strength, sensation and

10  range of motion [of] the extremities.  Diagnostic testing showed no evidence of

11  axonal injury to the nerve roots in the legs, lumbosacral radiculopathy, or

12  peripheral neuropathy."  Tr. 31 (internal citations to the record omitted).

13      Similarly, the ALJ found the medical evidence did not support the degree of

14  mental limitations alleged by Plaintiff.  The ALJ set out, in detail, the medical

15  evidence regarding Plaintiff's mental impairments, *see* Tr. 28-31, and ultimately

16  concluded that her allegations were inconsistent with the medical evidence, Tr. 31.

17  For instance, although Plaintiff "alleged her mental health symptoms caused her

18  problems thinking and understanding things," the ALJ noted that Plaintiff was

19  "able to complete a three-step task, recall two words after a delay, perform serial

20  three counting task, and had no difficulty following conversation."  Tr. 31

1   (citations to the record omitted).  Further, although Plaintiff "testified that her

2   depression caused social isolation and crying spells every day," the record showed

3   mental health providers found Plaintiff to be "pleasant, cooperative and personable

4   with good eye contact" and, at most, mildly depressed.  Tr. 31 (citations to the

5   record omitted).

6        These inconsistencies between the Plaintiff's alleged physical and mental

7   limitations and medical evidence provided a permissible reason for discounting

8   Plaintiff's credibility.  *Thomas*, 278 F.3d at 958; *see also Rollins v. Massanari*, 261

9   F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected

10  on the sole ground that it is not fully corroborated by objective medical evidence,

11  the medical evidence is still a relevant factor in determining the severity of the

12  claimant's pain and its disabling effects.").  Accordingly, this Court does not find

13  error.

14       Second, the ALJ found Plaintiff's lack of treatment for her back pain

15  suggested that her symptoms were not as debilitating as alleged.  Tr. 31.

16  Regarding lack of treatment, the ALJ noted the following:

17       The claimant testified having no treatment related to her back since
         December of 2010. Of note, although she has not had treatment since
18       that time, she testified that her back symptoms were better.  She
         testified her treating physician recommended that she have back
19       surgery.  She testified that she has not followed this recommendation,
         nor did she plan to.  In addition, the record shows significant periods
20       during which the claimant has not taken any medications for pain

relief.  At the hearing she testified that she does not take any
medication to relieve her back pain.

Tr. 31-32 (citations to the record omitted).  Although Plaintiff asserts that she

explained at the hearing that she did not want to get surgery because she was afraid

of possible complications from a poor surgical result, the ALJ rejected this

explanation as inadequate. *See Tommasetti*, 533 F.3d at 1039 (permitting an ALJ to

consider "unexplained or inadequately explained" failure to seek treatment when

making an adverse credibility finding); *see also* SSR 82-59, Titles II and XVI:

Failure to Follow Prescribed Treatment, 1982 WL 31384 ("An individual may . . .

attempt to justify refusal of surgery on the grounds of alleged personal or third

party knowledge of persons who did not improve, or perhaps worsened, following

surgery similar to that recommended to the individual by a treating physician.

However, such reason[] for nonacceptance of surgical treatment will not, in and of

itself, negate a finding of 'failure' [to follow prescribed treatment].").  Moreover,

Plaintiff does not explain her failure to seek pain medication treatment.

Accordingly, this Court does not find error.

        Third, the ALJ found "the claimant's daily activities are not limited to the

extent one would expect, given the complaints of disabling symptoms and

limitations." Tr. 32.  In support, the ALJ noted the following:

> [The claimant] reported having no problem with her personal care.
> She reported preparing meals daily. She reported performing light
> household chores every two to three days. She reported driving a car.

> She reported shopping in stores monthly. She reported being able to
> handle her personal funds. She reported watching television daily. She
> testified having no problem following a television program or reading
> the newspaper. The consultative examiner found she did not need help
> to complete her activities of daily living.

Tr. 32 (citations to the record omitted).  Plaintiff contends that the ALJ failed to

take into account the modifications Plaintiff made to her activities—for instance,

Plaintiff asserts she can do housework but it takes much longer.  ECF No. 13 at 11.

However, as noted by Defendant, the ALJ's characterization of the record is not

inaccurate but rather a reasonable interpretation of Plaintiff's testimony.  ECF No.

18 at 15-16 (citing *Rollins*, 261 F.3d at 857).  Moreover, considering the RFC

explains that Plaintiff can perform "work at a low average pace," the ALJ appears

to have taken into consideration Plaintiff's modifications when considering the

evidence.  These inconsistencies between Plaintiff's alleged limitations and her

reported daily activities provided a permissible and legitimate reason for

discrediting Plaintiff's credibility."  *See Molina*, 674 F.3d at 1113 ("Even where

those activities suggest some difficulty functioning, they may be grounds for

discrediting the claimant's testimony to the extent that they contradict claims of a

totally debilitating impairment.").  Accordingly, this Court does not find error.

Finally, the ALJ, using ordinary techniques of credibility determination,

found another reason to discount Plaintiff's statements regarding her physical and

mental limitations.  Tr. 32.  For instance, noting that Plaintiff made various

inconsistent statements throughout the record, the ALJ found that although the

Plaintiff testified that her back pain limited her ability to drive outside of a three-

mile radius, she testified to driving to Texas from Washington with a friend.[1]  Tr.

32.  Further, although Plaintiff testified that her depression caused her loss of

appetite such that she would not eat every day, she testified that she had not lost

weight and reported gaining weight to medical providers.  Tr. 32.  Regarding her

mental health symptoms, the ALJ found Plaintiff's testimony at the hearing to be

vague and unconvincing: "I asked the claimant twice if she had any other problems

except for her back pain. She responded no. The claimant only testified about her

_____

[1] Plaintiff contends she drove to Texas as a passenger and used a pillow to help

alleviate her back pain.  ECF No. 20 at 4.  It is unclear from the ALJ's opinion

whether he understood her to have driven to Texas or merely traveled to Texas by

car.  *See* Tr. 32.  At the hearing, Plaintiff merely said she "went down to Texas."

Tr. 65.  At any rate, the record suggests that Plaintiff was the driver.  *See* Tr. 719

("Currently, [claimant] is stressed since *her friend wants her to drive him* to Texas

to see his family . . . .) (emphasis added).  Other excerpts from the record merely

show that she was going to Texas with her friend but make no comment about

whether she was driving or the passenger.  *See* Tr. 684, 686, 721, 722.  An ALJ's

reasonable interpretation of testimony, even if it's not the only one, will not be

disturbed.  *Rollins*, 261 F.3d at 857.

mental health after I specifically asked her related questions.  When I asked the

claimant about her anxiety symptoms, she responded that she had problems

sleeping and was 'edgy,' but could not describe that triggered her anxiety."  Tr. 32;

*see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)

("[Q]uestions of credibility and resolution of conflicts in the testimony are

functions solely of the Secretary."). Because the ALJ may employ "ordinary

techniques of credibility evaluation" when assessing the Plaintiff's credibility,

*Thomas*, 278 F.3d at 960, the ALJ provided another permissible reason for not

fully crediting Plaintiff's testimony.

## C.    Medical Opinions

Finally, Plaintiff contends the ALJ failed to properly consider and weigh the

medical opinion evidence. ECF No. 13 at 14.  Specifically, Plaintiff asks this Court

to consider the ALJ's evaluation of the opinions of Dr. Dalley, Dr. Clifford, Dr.

Rosekrans, and Dr. Everhart.  *Id.* at 13-18.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan*, 246 F.3d at 1201-02 (citations omitted).  Generally, the opinion of a

treating physician carries more weight than the opinion of an examining physician,

1    and the opinion of an examining physician carries more weight than the opinion of

2    a reviewing physician.  *Id.*  In addition, the Commissioner's regulations give more

3    weight to opinions that are explained than to opinions that are not, and to the

4    opinions of specialists on matters relating to their area of expertise over the

5    opinions of non-specialists.  *Id.* (citations omitted).

6            **1.  Dr. Dalley**

7            Plaintiff contends that the ALJ did not properly weigh the findings of

8    examining psychologist, Dr. Mahlon Dalley, Ph.D.  Specifically Plaintiff points to

9    Dr. Dalley's April 2010 and January 2011 examinations in which he opined

10   Plaintiff suffered marked to severe limitations in social functioning and that her

11   mental impairments were likely to interfere with her ability to maintain

12   employment. Tr. 318, 322.

13           The ALJ properly evaluated the opinion of Dr. Dalley and reasonably

14   provided it only "little weight."  In support, the ALJ found Dr. Dalley's opinion

15   internally inconsistent and unsupported by his findings.  First, the ALJ noted that

16   the moderate GAF score is inconsistent with the remainder of Dr. Dalley's opinion.

17   Tr. 32.  Although Plaintiff disputes the probative value of her GAF score based on

18   its reliability, as Defendant notes, determining whether inconsistencies in evidence

19   or testimony is material is the task of the ALJ.  ECF No. 18 at 19 (citing *Morgan,*

20   169 F.3d at 603).  Second, the ALJ found that Dr. Dalley's opinion regarding

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

1    Plaintiff's social functioning was unsubstantiated by findings.  Tr. 32; *see Bray v.*

2    *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("[T]he ALJ

3    need not accept the opinion of any physician, including a treating physician, if that

4    opinion is brief, conclusory, and inadequately supported by clinical findings.").

5    Third, the ALJ found that Dr. Dalley's opinion appeared to rely "heavily" on

6    Plaintiff's subjective reports of her symptoms and limitations, which the ALJ

7    previously found to be less than credible.  Tr. 32; *Ghanim v. Colvin*, 763 F.3d

8    1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based 'to a large

9    extent' on an applicant's self-reports and not on clinical evidence, and the ALJ

10   finds the applicant not credible, the ALJ may discount the treating provider's

11   opinion." (quoting *Tommasetti*, 533 F.3d at 1041)).  Accordingly, because the ALJ

12   reasonably evaluated Dr. Dalley's opinion, this Court does not find error.

### 2.  Dr.  Clifford

14         Plaintiff also contends the ALJ did not properly weigh the findings of state

15   agency psychological consultant Dr. Thomas Clifford, Ph.D.  Specifically, Plaintiff

16   points to Dr. Clifford's opinion that Plaintiff would do best with superficial public

17   contact, which opinion was affirmed by state agency psychological consultant, Dr.

18   Michael Brown, Ph.D.  ECF No. 13 at 17.

19         This Court finds the ALJ properly afforded Dr. Clifford's opinion "little

20   weight."  The ALJ found the opinion was "inconsistent with the balance of the

medical evidence showing [claimant] was pleasant, cooperative and personable

with good eye contact." Tr. 33.  Further, the ALJ found Dr. Clifford's opinion that

Plaintiff would do best with superficial contact was inconsistent with Plaintiff's

"statements she had no problem getting along with others and had no conflict with

bosses or coworkers during past employment." Tr. 33.  Plaintiff's reliance on the

Seventh Circuit's opinion in *Micus v. Bowen*, 979 F.2d 602, 606 (7th Cir. 1992)

(holding that the ALJ erred in relying on claimant's statements to providers that

she "felt well or the like" where neither an analysis of these statements' relevance

nor an analysis of objective criteria for determining disability was present), to

show error is inapplicable to the facts and circumstances presented here

considering (a) whether Plaintiff can interact with members of the public is directly

relevant to whether she should be limited to superficial public contact, and (b) the

ALJ's RFC, as it relates to Plaintiff's mental health limitations, was sufficiently

supported by an  analysis of objective criteria. *See* Tr. 28-31.  Accordingly,

because the ALJ reasonably afforded Dr. Clifford's opinion only "limited weight"

in light of the inconsistencies between his opinion and other evidence in the record,

this Court does not find error.

### 3.  Dr. Rosekrans

Plaintiff also contends the ALJ did not properly weigh the opinion of Dr.

Frank Rosekrans, Ph.D., an examining psychologist.  Specifically, Plaintiff points

to the January 2012 psychological evaluation Dr. Rosekrans, in which he opined

that Plaintiff seemed unlikely to return to work.  ECF No. 13 at 17.

The Court finds the ALJ properly assigned Dr. Rosekrans' opinion "little

weight."  In support, the ALJ asserts that Dr. Rosekrans' opinion is "quite

conclusory, providing very little explanation of the evidence relied on in forming

the opinion."  Tr. 34, *see Bray*, 554 F.3d at 1228 ("[T]he ALJ need not accept the

opinion of any physician, including a treating physician, if that opinion is brief,

conclusory, and inadequately supported by clinical findings.").   As noted by the

ALJ, Dr. Rosekrans is only qualified to express an opinion about what physical or

mental limitations a patient's impairments cause, not whether a patient is disabled

and unable to work.  Tr. 34.  Accordingly, the ALJ permissibly rejected Dr.

Rosekrans' conclusory opinion.

### 4.  Dr. Everhart

Finally, Plaintiff contends the ALJ did not properly weigh the opinion of Dr.

Joyce Everhart, Ph.D.  Specifically, Plaintiff points to Dr. Everhart's September

2012 examination in which she opined that Plaintiff would have difficulty working

with the public and would do best not having close interaction with supervisors or

coworkers.  ECF No. 13 at 17-18.

This Court finds the ALJ properly assigned Dr. Everhart's opinion regarding

Plaintiff's social functioning "little weight."  In support, the ALJ notes that Dr.

Everhart's opinion is not substantiated by findings.  Tr. 34; *see Bray*, 554 F.3d at 1228 ("[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").   Further, the ALJ found Dr. Everhart's opinion inconsistent with the claimant's statements professing no problem getting along with others and no conflict with bosses or coworkers during past employment.  Tr. 34.  Accordingly, because the ALJ relied on permissible reasons for partially rejecting the opinion of Dr. Everhart, this Court does not find error.

**IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 18) is **GRANTED**.

The District Court Executive is directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** June 11, 2015.



THOMAS O. RICE
United States District Judge